**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**OWENSBORO DIVISION**
**CIVIL ACTION NO. 4:25-CV-00078-HBB**

**STEPHEN M.**[1]                                                                                    **PLAINTIFF**

**VS.**

**FRANK BISIGNANO,**
**COMMISSIONER OF SOCIAL SECURITY**                                      **DEFENDANT**

**MEMORANDUM OPINION**
**AND ORDER**

### I.       BACKGROUND

Before the Court is the Complaint (DN 1) of Stephen M. ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g).   Plaintiff filed an initial brief (DN 16, 17), Defendant filed a brief in response (DN 21), and Plaintiff filed a brief in reply (DN 22).   For the reasons that follow, the final decision of the Commissioner is **AFFIRMED**.

Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 10).   By Order entered September 23, 2025 (DN 11), the parties were notified that oral arguments would not be held unless a written request therefore was filed and granted.   No such request was filed.

---

1 Pursuant to General Order 22-05, Plaintiff's name in this matter was shortened to first name and last initial.

## II.    FINDINGS OF FACT

On March 11, 2021, Plaintiff protectively filed an application for Disability Insurance Benefits (Tr. 25, 159-60).  Plaintiff alleged that he became disabled on August 15, 2013, as a result of Post-Traumatic Stress Disorder ("PTSD"), anxiety, history of several strokes, depression and type II diabetes (Tr. 25, 79, 85, 196).  The application was denied initially on October 13, 2021, and upon reconsideration on January 20, 2022 (Tr. 25, 78, 84).  On January 27, 2022, Plaintiff filed a written request for hearing (Tr. 25, 114).

Following a telephonic hearing, Administrative Law Judge Aubri Masterson ("ALJ Masterson") issued a decision dated July 19, 2022, that evaluated Plaintiff's disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 25-38).  At step five, ALJ Masterson found Plaintiff is capable of performing a significant number of jobs that exist in the national economy (Tr. 36-37).  Therefore, ALJ Masterson concluded that Plaintiff has not been under a "disability," as defined in the Social Security Act, from August 15, 2013, through December 31, 2018, the date last insured (Tr. 38).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 1513-15).  The Appeals Council denied Plaintiff's request for review (Tr. 8-10).

Plaintiff filed a complaint before this Court (Tr. 1469-71).  The Court subsequently granted a stipulation by the parties that this matter should be remanded to the Commissioner for further administrative proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g) (Tr. 1473).  The Appeals Council then remanded this matter back to an Administrative Law Judge for further proceedings (Tr. 1477-78).

Administrative Law Judge Stacey Foster ("ALJ Foster") conducted telephonic hearings on March 21, 2025, and April 25, 2025 (Tr. 1351).  Plaintiff and his non-attorney representative, Kristen Brown, participated in both telephonic hearings (*Id.*).  Robert Piper, an impartial vocational expert, testified during the March 21, 2025, telephonic hearing (*Id.*).  Jason Lulejian, an impartial vocational expert, testified during the April 25, 2025, telephonic hearing (*Id.*).  ALJ Foster noted that the Appeals Council directed that a further evaluation of Plaintiff's alleged physical and mental symptoms be conducted (Tr. 1351).

In a decision dated May 22, 2025, ALJ Foster evaluated Plaintiff's adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 1351-61).  At the first step, ALJ Foster found Plaintiff did not engage in substantial gainful activity during a period of at least 12 months from his alleged onset date of August 15, 2013 (Tr. 1353-54).  At the second step, ALJ Foster determined that Plaintiff has the following severe impairments: mood and anxiety disorders with post-traumatic stress disorder (Tr. 1354).  At the third step, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (*Id.*).

At step four, ALJ Foster found that Plaintiff has the RFC to perform a full range of work at all exertional levels but with the following nonexertional limitations: Plaintiff must avoid concentrated exposure to loud noise as defined in the SCO and must avoid all exposure to hazards; he can understand, remember, and carry out simple instructions and procedures involving brief initial learning periods (defined as periods of 30 days or less); he can maintain concentration, persistence, and pace for simple tasks involving little or no independent judgment and minimal variation; he can have occasional interaction with supervisors and coworkers but no interaction

3

with the public; and he can adapt to the pressures and changes of a routine work environment (Tr. 1356). Additionally, ALJ Foster determined that Plaintiff is unable to perform any of his past relevant work (Tr. 1359).

ALJ Foster proceeded to the fifth step where he considered Plaintiff's RFC, age, education, and past work experience as well as testimony from the vocational expert (Tr. 1360-61). ALJ Foster found that Plaintiff is capable of performing a significant number of jobs that exist in the national economy (*Id.*). Therefore, ALJ Foster concluded that Plaintiff has not been under a "disability," as defined in the Social Security Act, from August 15, 2013, through December 31, 2018, the date last insured (Tr. 1361). The parties acknowledge that ALJ Foster's decision became the final decision of the Commissioner, and the Court has jurisdiction pursuant to 42 U.S.C. § 405(g) (DN 17 PageID # 2750; DN 21 PageID # 2781).

### III.    CONCLUSIONS OF LAW

#### A.    Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993); *Wyatt v. Sec'y of Health & Hum. Servs.*, 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied. *Landsaw v. Sec'y of Health & Hum. Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Cotton*, 2 F.3d at 695 (quoting *Casey v. Sec'y of Health & Hum. Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993)). In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence,

nor decide questions of credibility." *Cohen v. Sec'y of Health & Hum. Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (quoting *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the parties acknowledge that ALJ Foster's decision became the final decision of the Commissioner.   20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); *see* 42 U.S.C. § 405(h) (finality of the Commissioner's decision).   Thus, the Court will be reviewing ALJ Foster's decision and the evidence that was in the administrative record when ALJ Foster rendered the decision.   42 U.S.C. § 405(g); 20 C.F.R. § 404.981; *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton*, 2 F.3d at 695-96.

## B.    The Commissioner's Sequential Evaluation Process

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities.   42 U.S.C. § 401 et seq. (Title II Disability Insurance Benefits).   The term "disability" is defined as an

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. § 423(d)(1)(A) (Title II); 20 C.F.R. § 404.1505(a); *Barnhart v. Walton*, 535 U.S. 212, 214 (2002); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim.   *See* "Evaluation of disability in general," 20 C.F.R. § 404.1520.   In summary, the evaluation proceeds as follows:

1)    Is the claimant engaged in substantial gainful activity?

2)    Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

5

3)      Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

4)      Does the claimant have the RFC to return to his or her past relevant work?

5)      Does the claimant's RFC, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

20 C.F.R. § 404.1520(a)(4)(i)-(v).   Here, the ALJ denied Plaintiff's claim at the fifth step.

### C.      **Challenge to ALJ's Persuasiveness Assessment**

#### 1.      *Arguments of the Parties*

Plaintiff claims that ALJ Foster erred as a matter of law by failing to adequately assess the opinion of the testifying medical expert, Dr. Jason Lulejian, that Plaintiff's PTSD meets listing 12.15 due to marked to extreme limitations in the four areas of mental functioning known as the "paragraph B" criteria, and succumbing to the temptation to play doctor by formulating Plaintiff's RFC based on her own lay assessment of the medical evidence in the record (DN 17 PageID # 2764-69).   Plaintiff contends that ALJ Foster's reasons for rejecting Dr. Lulejian's opinion were nonsensical and not supported by substantial evidence (*Id.* at PageID # 2765).   Plaintiff points out that Dr. Lulejian's opinion—marked to extreme limitations in the four areas of mental functioning—is consistent with Plaintiff's hearing testimony (March and April 2025) and comments in several medical reports (*Id.* at PageID # 2766-68).   Plaintiff argues, "[b]ased upon a full and fair consideration of the record, a reasonable mind could decide the Plaintiff meets listing 12.15 for PTSD as opined by Dr. Lulejian (Tr. 1388-1389), and the Plaintiff's mental limitations are marked to extreme (Tr. 1389-1399)" (*Id.* at PageID # 2769).

Defendant responds, "[t]he ALJ considered Plaintiff's testimony and subjective complaints regarding the relevant period — from his alleged onset date of August 15, 2013, through his date

last insured of December 31, 2018 — as well as the medical evidence and other evidence in the record" (DN 21 PageID # 2783) (citing Tr. 1353-59). Additionally, Defendant points out that ALJ Foster "carefully and thoroughly explained why she found Dr. Lulegian's opinion unpersuasive pursuant to the regulatory factors" (*Id.*) (citing Tr. 1359). Further, explains Defendant, substantial evidence supports ALJ Foster's findings (*Id.*). Moreover, indicates Defendant, "[w]hile no medical opinion directly supported the ALJ's RFC finding, that is not a reason for remand" (*Id.*) (citing *Jankiowiak v. Comm'r of Soc. Sec.*, No. 20-11601, 2021 WL 4472776, at *2 (E.D. Mich. Sept. 30, 2021) ("As the Magistrate Judge recognized, the Sixth Circuit has repeatedly rejected the *Deskin* premise that medical opinions must be the building blocks of RFC assessments.") (citation modified)).

In reply, Plaintiff asserts "the ALJ impermissibly substituted her own judgment for that of medical professional Dr. Lulejian because the ALJ decided Dr. Lulejian's opinion 'is not entirely persuasive because it was not well-cited as to evidence. . . and it is not consistent with other evidence" (DN 22 PageID # 2790) (citing Tr. 1359). Plaintiff contends ALJ Foster mischaracterized fact because his opening brief identifies substantial evidence that supports Dr. Lulejian's expert opinion (*Id.*). Plaintiff accuses Defendant of making *post-hoc* rationalizations to defeat remand (*Id.*). Plaintiff claims ALJ Foster rejected Dr. Lulejian's expert opinion based on her own lay interpretation of raw medical data (*Id.* at PageID # 2790-91). Further, Plaintiff posits that the ALJ has not built "an accurate and logical bridge with a narrative explanation to connect evidence to the RFC conclusion because ALJ Foster's basis for rejecting Dr. Lulejian's opinion is neither accurate nor logical" (*Id.* at PageID # 2791).

### 2.   *Applicable Law*

The RFC assessment is an ALJ's ultimate determination of what a claimant can still do despite his or her physical and mental limitations.   20 C.F.R. §§ 404.1545(a), 404.1546(c).   ALJs make this finding based on a consideration of medical source statements, prior administrative medical findings, and all other evidence in the case record.   20 C.F.R. §§ 404.1529, 404.1545(a)(3), 404.1546(c).   Thus, in making the RFC determination ALJs must necessarily evaluate the persuasiveness of the medical source statements and prior administrative medical findings in the record as well as assess the claimant's subjective allegations.   20 C.F.R. §§ 404.1520c, 404.1529(a).

As mentioned above, Plaintiff challenges ALJ Foster's persuasiveness evaluation of Dr. Lulejian's opinion testimony.   Therefore, a discussion about the applicable regulations is warranted.   ALJs evaluate the "persuasiveness" of medical opinions and prior administrative medical finding[2] by utilizing the five factors listed in paragraphs (c)(1) through (c)(5) of the regulation.   20 C.F.R. § 404.1520c(a) and (b).[3]   The five factors are supportability, consistency, relationship with the claimant, specialization, and other factors.   20 C.F.R. § 404.1520c(c)(1)-(5).[4]   Of these five factors, the two most important are supportability and consistency.   20 C.F.R.

---

2 At the initial and reconsideration levels, state agency medical and psychological consultants review the evidence in the case record and make "administrative medical findings."   20 C.F.R. § 404.1513a(a)(1).   ALJs "must consider" the administrative medical findings of non-examining state agency medical or psychological consultants according to the new regulation.   20 C.F.R. § 404.1513a(b)(1).

3  The regulations explicitly indicate "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)," in the record, even if it comes from a treating medical source.   20 C.F.R. § 404.1520c(a).   This quoted language indicates that the new regulations have done away with the controlling weight rule in 20 C.F.R. § 404.1527(c)(2).

4  In assessing the relationship with the client, consideration should be given to the following: length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship.   20 C.F.R. § 404.1520c(c)(3)(i)-(v).

§ 404.1520c(a) and (b)(2).   Further, the regulation requires ALJs to explain how they considered the supportability and consistency factors in determining the persuasiveness of the medical source's opinion.   20 C.F.R. § 404.1520c(b)(2).   Notably, under the regulations ALJs "may, but are not required to, explain how" they considered the three other factors in determining the persuasiveness of the medical source's opinion.   20 C.F.R. § 404.1520c(b)(2).

The regulations provide the following descriptions:

(1)    *Supportability*.   The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

(2)    *Consistency*.    The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 404.1520c(c)(1)-(2).

### 3.    *Discussion*

The undersigned will review ALJ Foster's decision holistically in addressing Plaintiff's challenge to her evaluation of the persuasiveness of Dr. Lulejian's opinion testimony.   *See Jenna B. v. Comm'r of Soc. Sec.*, No. 3:25-cv-00126, 2025 WL 3653233, at *12 (S.D. Ohio Dec. 17, 2025) (finding that the ALJ's decision, read holistically, demonstrates he sufficiently analyzed the medical opinion for consistency); *Perkins v. Comm'r of Soc. Sec.*, No. 1:20-cv-554, 2021 WL 3722772, at *8 (S.D. Ohio Aug. 23, 2021) ("Reading the opinion as a whole, the ALJ fairly described the lack of supportability and lack of consistency for Ms. Smith's opinions . . ."); *see also Buckhannon v. Astrue*, 368 F. App'x 674, 678-79 (7th Cir. 2010) (indicating an ALJ's decision is "read as a whole and with common sense").

During the administrative hearing on April 25, 2025, ALJ Foster received medical opinion testimony from Dr. Lulejian concerning whether Plaintiff's mental impairments meet or medically equal the "paragraph A" (diagnostic) and "paragraph B" (functional limitations)[5] criteria of listings 12.04 (*Depressive, bipolar, and related disorders*), 12.06 (Anxiety and obsessive-compulsive disorders), and 12.15 (*Trauma- and stressor-related disorders*) (Tr. 1355, 1388-90). *See* 20 C.F.R. § 404.1520a(c)(3); 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00E.   During his testimony, Dr. Lulejian cites Exhibit 15F as the source of information that he relies on in reaching his opinions concerning the degree of limitation in each of the four broad functional areas (Tr. 1388-90).   Exhibit 15F is a Department of Veterans Affairs PTSD Disability Benefits Questionnaire form filed out by Kimberly LaFollette, Psy.D., and signed on October 19, 2023 (Tr. 2554-59).

The relevant portion of the hearing transcript reads:

A       All right.   So in the listings, I considered, for [Plaintiff], I considered 12.15, 12.14, 12.06.   12.15 overall probably the best met, strongest evidence that it meets all three of the criteria.   So I'm going to list that, the paragraph A, symptom matrix. For intrusive memories and nightmares, found on Exhibit 15F, page 4.   And there's persistent avoidance on same, then negative mood and cognition, which includes guilt, anhedonia, and distorted beliefs, would be Exhibit 15, page 4 through 5, hyperarousal, which includes startles, outbursts, et cetera, that's 15F, page 5. Sleep disturbance and concentration problems, 15F, page 5, and suicidal thoughts, 15F, page 6, which establishes all five criteria required for 12.15's paragraph A.   In terms of the functional limitations, which would be paragraph B, I'll do a rank, and then give you citations.   On understanding, remembering , and applying information, I rated it marked, interacting with others, marked, concentrating and maintaining pace, marked, and adapt and manage oneself, extreme.   So for understanding, remembering, and applying, difficulty understanding complex commands, [INAUDIBLE] events, page   sorry   Exhibit 15F, page 5, suspicious

---

5 The "paragraph B" criteria address the degree of limitation in the following four broad functional areas: "Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself."   20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).   These four broad functional areas are evaluated on the following five-point rating scale: "None, mild, moderate, marked, and extreme."   20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4).

and irritability, ineffective work socially, Exhibit 15F page 5, concentration, persistence, maintain pace, continuous depression, chronic sleep loss, concentration problems same, and then total occupational and social impairment [INAUDIBLE] and suicidal thoughts are shown on Exhibit 15F, page 2 and 6, which meets both the criteria for one extreme, or two, marked.   There's no substance use, through lF through 116, that are material for the determination.   And then on paragraph E, they do effectively meet that.   So on the ongoing VA mental healthcare, and the monthly counseling since 2010, with persistent mental health, despite multi drug regiments, which include as Mr. Miller mentioned, Preproposal, Duloxetine, which has been Clonazepam, at 15F, page 3 through [INAUDIBLE] with greater than two years of serious poorly controlled mental health problems, which firmly meets 12.15.

Q      All right.   And looking at specific work-related functional limitations, do you feel that there are any demonstrated by the evidence?

A      Yes.

Q      All right.   And based on your analysis, what functional limitations would the Claimant exhibit in the work environment?

A      I would generally postulate, based especially on paragraph B, global impairment, probably kind of on a [INAUDIBLE] level, this is someone who I would have a lot of trouble thinking they wouldn't be able to do much in terms of maintaining persistent pace.   They can't really adapt themselves, especially under minimal stress.   They can't really interact with others very well, with a lot of conflict and difficulty, and of course, lots of cognitive impairments was memory loss for multiple events, especially given that the Claimant did also 70% service connected for PTSD.   I'm also a VA doctor as well.   So I'm very familiar with the DBQ process and the service connection process, which is a very hard bar to meet for 70% service connection.   Essentially, it seems pretty clearly that the route at times, all the way back to 1990, where there was a mention of the initial events of witnessing combat related trauma that essentially the impairment has maintained and progressed through.   And 70% is pretty common for someone who's close to, by the VA's definition, what we call total and complete disabled.   So I would postulate that he's probably in that higher realm.   For the civilian level, I would easily put that -- some of his brain skills are a little low on the PHQ9-JD7, in 2024.   But that's not uncommon in the VA, that a lot of veterans with PTSD will kind of under rank themselves, in terms of their total scores, although the subthreshold for PTSD, he met on that, even though the VA likes to use the cutoff of 45.   He scored a 41.   But DSM-5 considers anything 33 and above, to be clinically significant PTSD.

(Tr. 1388-90).

At step three, ALJ Foster made the following "paragraph B" criteria findings and, relatedly,

began the process of assessing the persuasiveness of Dr.Lulejian' opinion:

11

> In understanding, remembering or applying information as well as with regard to concentrating, persisting, or maintaining pace, the record supports no more than moderate related difficulties as to both domains.   While the claimant has alleged some related symptoms, exam findings during this period repeatedly note normal or intact memory apart from some deficits noted during one visit as well as normal findings repeatedly with regard to alertness, concentration/attention, and fund of information (1F, p. 23, 36, 49, 52, 60, 68, 73, 81, 103).
>
> In interacting with others, the claimant had a moderate limitation.   The claimant has alleged related irritability and related difficulty receiving and giving instructions from others but acknowledged a good relationship with family at his hearing and referenced long-term relationships with customers and friends related to his lawncare business.   Exams support some anxiousness and/or depressed mood/affect at times but otherwise appear unremarkable with few or no apparent exceptions, including findings with regard to appearance, speech, alertness, and thought content (Id.).
>
> As for adapting or managing oneself, the claimant had experienced a moderate limitation.   The medical expert at the hearing, Dr. Lulejian, most significantly endorsed extreme limits in this domain; however, this is not consistent with the other evidence.   He has alleged problems performing personal care/hygiene tasks as well as minimal daily activities in a prior report (5E).   However, at the hearing, he acknowledged activities like working in a lawncare business and grocery shopping.   He described limitations related to his physical symptoms but indicated he has had the same customers for several years and maintained stable hours.   He testified that he has never missed a day of work due to symptoms going back even through his alleged onset, although he did indicate that he left work early or needed breaks at times.   Related findings on his exams also appear mostly normal apart from depressed and/or anxious mood/affect findings, including with regard to fair or intact judgement/insight and normal appearance or dress (1F, p. 23, 36, 49, 52, 60, 68, 73, 81, 103).
>
> Because the claimant's mental impairments did not cause at least two "marked" limitations or one "extreme" limitation, the "paragraph B" criteria were not satisfied.

(Tr. 1355-56).[6]   Pertinent here is ALJ Foster's finding that Dr. Lulejian's opinion—an extreme

limitation adapting or managing oneself—is inconsistent with other evidence in the record.   As

---

[6] Relatedly, at step one, ALJ Foster noted that during both the March and April 2025 hearings, Plaintiff acknowledged he ran a lawncare business during the period in question—August 15, 2013 (onset date) through December 31, 2018 (date last insured) (Tr. 1354).   ALJ Foster also noted that Plaintiff was "incarcerated for a large segment of the period in question, from 2014 until 2016" (*Id.*).

indicated above, ALJ Foster substantiated this finding with Plaintiff's testimony about his lawn care business and grocery shopping[7] and by pin citing the results of multiple mental status examination findings (Tr. 285, 298, 311, 314, 322, 330, 335, 342-43, 365).   Clearly, substantial evidence supports this finding by ALJ Foster.

In connection with step four, ALJ Foster found through the date last insured, Plaintiff had the RFC to perform work at all exertional levels but his medically determinable mental impairments imposed the following non-exertional limitations: he must avoid concentrated exposure to loud noise as defined in the Selected Characteristics of Occupations ("SCO") and must avoid all exposure to hazards; he can understand, remember, and carry out simple instructions and procedures involving brief initial learning periods (defined as periods of 30 days or less); he can maintain concentration, persistence, and pace for simple tasks involving little or no independent judgment and minimal variation; he can have occasional interaction with supervisors and coworkers but no interaction with the public; and he can adapt to the pressures and changes of a routine work environment (Tr. 1356).

In making the above mental RFC findings, ALJ Foster considered Plaintiff's written and oral subjective statements about the intensity, persistence, and limiting effects of his medically determinable mental impairments and found those statements are not entirely consistent with the relatively routine and conservative treatment Plaintiff received through his date last insured (Tr. 1357).   ALJ Foster noted there were no hospitalizations or frequent emergency room or urgent care visits to corroborate the more serious symptoms Plaintiff reported (Tr. 1357-58).   ALJ Foster

---

7 During the hearings on April 25, 2025, and March 21, 2025, Plaintiff's testimony about his lawn care business is located at Tr. 1374-75, 1378-79, 1381-83, 1385-86 and Tr. 1417-19.   During the hearing on March 21, 2025, Plaintiff testified about grocery shopping at Tr. 1413.

observed that mental status exams "appear largely unremarkable apart from depressed or anxious mood/affect" (Tr. 1358).    ALJ Foster substantiated this observation by discussing treatment records—from December 2013, January 2014, March 2014, September 2017, April 2018, May 2018, July 2018, November 2018, and December 2018—where Plaintiff's severe subjective statements were inconsistent with often unremarkable mental status examination results, where his complaints of medication side effects are not corroborated, and where he at times reported his medications were working well (*Id.*) (citing Tr. 281, 285, 298, 300, 311, 314, 318, 320, 321, 322, 330, 335, 342-43, 348-49, 361, 365-66, 384, 2566-2687).[8]

In the following two paragraphs, ALJ Foster assessed the persuasiveness of the medical opinions of Drs. Lulejian and LaFollette, and the prior administrative medical findings of the state agency psychological consultants:

> The medical expert at the hearing, Dr. Lulejian, did not endorse specific limitations for the most part but testified that the claimant has marked or extreme limits in all of the "paragraph B" criteria and seemed to rule out work with simple tasks and sustained interaction with others.  He testified that the claimant meets 12.15 for PTSD and indicated the claimant was unable to "do much" in terms of maintaining concentration, persistence, and pace and that he would not be able to interact with others and would have lots of cognitive impairment as well.  However, this is not entirely persuasive because it was not well-cited as to evidence during the most relevant period prior to the date last-insured, and it is not consistent with other evidence.  Dr. Lulejian cited the claimant's 70% service connected disability in the record, which is inherently neither valuable nor persuasive under our rules as noted above.  Otherwise, he cited references, most significantly, to suspiciousness, irritability, difficulty maintaining social relationships, difficulty with daily activities, and suicidality in the record based on Exhibit 15F, which is a statement signed by Dr. LaFollette in October 2023 that supports "total occupational and social impairment" based on a purported review of his treatment history back to 1995 as well as a telehealth exam and his reports of symptoms.  However, this evidence is also not persuasive for the same reasons.  Both appear too heavily based on his subjective reports of symptoms and contain little or no reference to objective signs or exam evidence that align with more than moderate symptoms or

---

8 The ALJ noted that at some point after March of 2014, Plaintiff was incarcerated through September of 2017 (Tr. 1358).

limitations, particularly during the primary period at issue prior to the date last insured in 2018.   As outlined above, most exams during this period actually appear largely or entirely unremarkable.   In fact, his exam with Dr. LaFollette in October 2023 also appears largely normal apart from depressed mood/affect (15F, p. 6). He reported a depressed mood and passive suicidal thoughts as well as thoughts of harming others, which also seems not entirely consistent with treatment notes during the relevant period outlined above, and his exam otherwise indicates that he was oriented times 4, appeared polite and cooperative throughout the assessment, and had logical and goal-directed speech.    Furthermore, neither of these assessments address other inconsistencies in the record such as his ability to operate a lawn care business or his relatively conservative treatment history.   Accordingly, these assessments help to support the need for some limitations; but more than moderate symptoms or the inability to sustain at least work with simple tasks with some contact with others does not seem consistent with the other evidence apart from the claimant's allegations—at least not during the period between the claimant's alleged onset in 2013 and his date last insured in 2018.

On the other hand, state agency reviewing psychologist assessments in October 2021 and January 2022 indicate that the record was insufficient to support severe impairments prior to the date last insured (2A, 4A).   These are not particularly well-cited, and the extensive treatment notes outlined above seem sufficient to support at least some limitations to reduce stress and pressure and account for social anxiety, irritability, mood/affect changes, and other signs and symptoms to some degree consistent with his allegations.   Depressed and anxious mood/affect findings in his exams reasonably support the need for some moderate social limits, and simple task limits seem appropriate as well to account for distraction due to his symptoms.   Accordingly, these are also not entirely persuasive; but the record overall in any case still does not seem entirely consistent with the claimant's allegations.

(Tr. 1359).

Contrary to Plaintiff's claim, the first paragraph indicates ALJ Foster considered both supportability and consistency in assessing the persuasiveness of Dr. Lulejian's opinion. Concerning supportability, ALJ Foster found that Dr. Lulejian's opinion "was not well-cited as to evidence during the most relevant period prior to the date last-insured" (*Id.*).   ALJ Foster pointed out that Dr. Lulejian cited the disability decision of the Veterans Administration that was not binding or persuasive under the Agency's rules.  *See* 20 C.F.R. § 404.1504.   ALJ Foster also

15

noted that Dr. Lulejian cited Dr. LaFollette's findings that were primarily based upon Plaintiff's subjective complaints (*Id.*). ALJ Foster explained that Dr. LaFollette's findings were not supported by her own October 2023 examination results that appear largely normal apart from observing Plaintiff had depressed mood/affect (*Id.*).

ALJ Foster found that the findings of Drs. Lulejian and LaFollett were inconsistent with the results of most mental status exams during the relevant period that are largely or entirely unremarkable (*Id.*). Further, ALJ Foster noted that the disability assessments of Dr. Lulejian and Dr. LaFollett do not address the fact that their opinions are inconsistent with Plaintiff's ability to operate a lawn care business for several years or his relatively conservative treatment history (*Id.*).

Contrary to Plaintiff's claim, ALJ Foster complied with both the supportability and consistency requirements in assessing the persuasiveness of Dr. Lulejian's opinion. *See* 20 C.F.R. § 404.1520c(c)(1)-(2). ALJ Foster has provided a logical and well-reasoned explanation for her findings on supportability and consistency in assessing the persuasiveness of Dr. Lulejian's opinion. Further, ALJ Foster's findings are supported by substantial evidence in the record. In making this determination, the undersigned notes that "[s]ubstantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993). The undersigned notes that Plaintiff's claim primarily relies on his own subjective statements and parts of medical records memorializing his subjective statements. By contrast, ALJ Foster principally depended on parts of the same medical records setting forth the objective observations of the individual performing the mental status examination. Consequently, there is no merit to Plaintiff's assertion that ALJ Foster's reasons for rejecting Dr. Lulejian's opinion were

nonsensical and not supported by substantial evidence.   Moreover, contrary to Plaintiff's claim, Defendant is not making *post-hoc* rationalizations to support the ALJ's decision.

Contrary to Plaintiff's accusation, ALJ Foster did not succumb to the temptation to play doctor in assessing Plaintiff's RFC.   As indicated in the above quoted paragraphs, ALJ Foster considered the opinions of Drs. Lulejian and LaFollett as well as the opinions of the state agency psychological consultants in assessing Plaintiff's RFC.   While ALJ Foster did not find any of these opinions entirely persuasive in light of the objective medical evidence and Plaintiff's activities such as running a lawn mowing business for several years, she did consider them along with the evidence of record in formulating an RFC that gives Plaintiff the benefit of the doubt concerning limitations imposed by his medically determinable metal impairments.   *See Christina K. v. O'Malley*, No. 1:23-CV-00043-HBB, 2024 WL 270193, at \*6 (W.D. Ky. Jan. 24, 2024) (finding that the ALJ "did not inappropriately play doctor but instead weighed the evidence," and in some areas of the RFC "gave Plaintiff the benefit of the doubt by deciding to impose slightly greater limits" than those opined by the state agency consultant).   The ALJ's RFC determination is supported by substantial evidence in the record and comports with applicable law.

## IV.    CONCLUSION

As the Court noted previously, "[a]s long as substantial evidence supports the Commissioner's decision, we must defer to it, even if there is substantial evidence in the record that would have supported an opposite conclusion . . ." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (citation modified).   Regardless of how this Court may view the evidence, it is not this Court's place to re-try or re-evaluate the findings of the ALJ.   42 U.S.C. § 405(g).   Rather, this Court is only to find if substantial evidence exists to support the ALJ's

decision and if the ALJ followed the applicable law.  *Id.*   After reviewing the record, the Court concludes that the ALJ's determination is supported by substantial evidence in the record and correctly follows the applicable law.   Therefore, Plaintiff is not entitled to relief with regard to his challenge.

## V.      ORDER

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **AFFIRMED**.

July 23, 2026

**H. Brent Brennenstuhl**
**United States Magistrate Judge**

Copies:      Counsel

18